**PUBLISH**
**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 31, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

EVERETTE LIVINGSTON JOHNSON,
a/k/a Everette Burns, a/k/a Everette Allen,

    Petitioner,

v.

WILLIAM P. BARR, United States
Attorney General,

    Respondent.

No. 19-9550

_____

**Petition for Review of an Order from the**
**Board of Immigration Appeals**
_____

Joshua Mitson (Hans Meyer, with him on the briefs), , Meyer Law Office P.C., Denver, Colorado, for Petitioner Everett Johnson.

Kohsei Ugumori, Senior Litigation Counsel (Joseph H. Hunt, Assistant Attorney General, and Emily Anne Radford, Assistant Director, with him on the brief), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

_____

Before **BACHARACH** and **CARSON**, Circuit Judges.[1]

_____

---

[1] The late Honorable Monroe G. McKay, United States Senior Circuit Judge, heard oral argument and participated in the panel's conference of this appeal, but passed away before its final resolution. The practice of this court permits the remaining two panel judges, if in agreement, to act as a quorum in resolving the appeal. United States v. Wiles, 106 F.3d 1516, 1516 n* (10th Cir. 1997); 28 U.S.C. § 46(d).

**CARSON**, Circuit Judge.

_____

Petitioner Everett Johnson, a citizen of the Bahamas, became a United States permanent resident in 1977. But in 2016, he pleaded guilty to possessing a schedule II controlled substance in violation of Colorado law. Soon after, the Department of Homeland Security (DHS) charged Johnson as removable from the United States based on the state drug conviction. The Board of Immigration Appeals (BIA) then ordered Johnson's removal from the United States back to the Bahamas. Johnson now petitions for review of that decision.

Our jurisdiction arises under 8 U.S.C. § 1252. We address whether Johnson's state drug conviction under the 2016 version of Colorado Revised Statute (C.R.S.) § 18-18-403.5(1), (2)(a) subjects him to deportation from the United States. Because C.R.S. § 18-18-403.5(1), (2)(a) is overbroad and indivisible as to the identity of a particular controlled substance, Johnson's conviction cannot subject him to removal from the United States. We therefore grant Johnson's petition for review, vacate the BIA's order, and remand to the BIA for further proceedings consistent with this opinion.

I.

After pleading guilty to possessing hydrocodone, a schedule II controlled substance under Colorado law, DHS initiated removal proceedings against Johnson. DHS charged him as removable under 8 U.S.C. § 1227(a)(2)(B)(i), a provision in the Immigration and Nationality Act that authorizes removing an alien for a state law

2

conviction "relat[ed] to a controlled substance (as defined in section 802 of Title 21)."

Johnson moved to terminate the removal proceedings before an immigration judge. He argued that under the categorical/modified categorical approach as established by the United States Supreme Court, his state drug conviction did not qualify as a removable offense under 8 U.S.C. § 1227(a)(2)(B)(i). Johnson claimed that C.R.S. § 18-18-403.5(1), (2)(a) was broader than its federal counterpart, the Controlled Substances Act, 21 U.S.C. § 801, et seq. (the CSA). More specifically, Johnson asserted that the Colorado statute was overbroad because it criminalized possessing a substance called morpholine—a substance the CSA does not criminalize.

The Immigration Judge (IJ) denied Johnson's motion to terminate. The IJ concluded that even though the Colorado statute criminalized possessing more substances than federal law, it was divisible rather than indivisible, permitting application of the modified categorical approach. The modified categorical approach allows a court to examine a limited category of court records, including the charging document, jury instructions, and plea agreement, to determine which specific crime the defendant committed. Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). And after reviewing Johnson's conviction record, the IJ determined that DHS could remove Johnson because he pleaded guilty to possessing a substance prohibited by both the Colorado statute and the CSA.

3

Johnson appealed to the BIA. The BIA agreed with the IJ that the Colorado statute was overbroad and thus did not categorically constitute a removable offense under federal law. But the BIA likewise determined that the statute was divisible and applied the modified categorical approach. And after reviewing Johnson's actual conviction record, the BIA dismissed Johnson's appeal and ordered him removed to the Bahamas.

When reviewing a BIA ruling, we review legal issues de novo, including whether a statute of conviction is divisible under the modified categorical approach. Jimenez v. Sessions, 893 F.3d 704, 709 (10th Cir. 2018).

II.

The Immigration and Nationality Act authorizes the removal of an alien convicted of violating a state law "relating to a controlled substance (as defined in section 802 of Title 21)." 8 U.S.C. § 1227(a)(2)(B)(i). No one disputes that Johnson violated Colorado state law. Instead, the parties dispute whether Johnson's state law violation subjects him to deportation as a violation "relating to a controlled substance." We must therefore determine whether Johnson's Colorado drug conviction qualifies as a violation of state law "relating to a controlled substance," as defined in the CSA.

We begin by applying the categorical approach to "assess whether [Johnson's] state drug conviction triggers removal under the immigration statute." Mellouli v. Lynch, 135 S. Ct. 1980, 1986, 1987 (2015). Under the categorical approach, a state drug conviction cannot qualify as a basis for removal if the state statute's elements

4

are broader than the federal analogue. Descamps v. United States, 570 U.S. 254, 257 (2013); Mathis, 136 S. Ct. at 2251. Here, we look specifically at whether the Colorado drug statute criminalizes more substances than "defined in section 802 of Title 21," i.e., the federal CSA. If it does, then the Colorado statute is "overbroad," and no "categorical match" exists between the Colorado statute and its federal analogue. Descamps, 570 U.S. at 276–77.

We agree with the parties that C.R.S. § 18-18-403.5 is broader than the CSA because the Colorado statute criminalizes possessing morpholine, while the CSA does not. And because the Colorado statute criminalizes a wider breadth of activity than the CSA, no "categorical match" exists between the Colorado statute and its federal analogue. Id.

Our inquiry, however, does not end just because the statute is overbroad. Instead, we must next consider whether the overbroad statute is divisible—that is, whether it "comprises multiple, alternative versions of the crime." Id. at 262. If the alternatives are "elements," then the statute is divisible, and we apply the modified categorical approach. Id. The modified categorical approach acts "as a tool" to determine which version of the crime underlies the defendant's conviction. Id. at 263.

Elements "are the constituent parts of a crime's legal definition" that "the prosecution must prove" and "what the jury must find beyond a reasonable doubt to convict the defendant." Mathis, 136 S. Ct. at 2248 (internal quotation marks and citation omitted). "Means," on the other hand, merely describe "[h]ow a given

5

defendant actually perpetrated the crime." Id. at 2251. Where a statute lists "diverse means of satisfying a single element," or "spells out various factual ways of committing some component of the offense," then such "means" are legally extraneous circumstances that do not constitute elements. Id. at 2249. If the statute lists alternative means rather than elements, then we do not apply the modified categorical approach, and the state conviction cannot qualify as a predicate to removal from the United States. See id. at 2251.

Having concluded that C.R.S. § 18-18-403.5(1), (2)(a) criminalizes more substances than the federal CSA and is thus "overbroad," we now address whether the Colorado statute is divisible.

III.

This case turns on whether the Colorado statute is divisible as to the identity of the particular controlled substance (here, hydrocodone). In other words, we must analyze whether the specific controlled substance is an "element" under C.R.S. § 18-18-403.5(1), (2)(a) or merely a "means" of committing the offense. If the specific controlled substance is merely a means of committing the offense, then the statute cannot serve as a basis for removal. Mathis, 136 S. Ct. at 2255–57; United States v. McKibbon, 878 F.3d 967, 974–76 (10th Cir. 2017). If, however, the specific identity of the controlled substance is an element, then neither party disputes that Johnson's actual crime of conviction matches the CSA.[2]

---

[2] Johnson pleaded guilty to possessing hydrocodone, a schedule II substance, the possession of which is prohibited by both the Colorado statute and the CSA.

6

The Supreme Court recognizes several authoritative state law sources that may determine whether a statute is divisible. Mathis, 136 S. Ct. at 2256. These include the statute itself, the punishments for different offenses under the statute, and state case law. Id. at 2255–57. Only if these sources fail "to provide clear answers," may we then look to Johnson's actual record of conviction. Id. at 2256.

A.

We begin with the statutory text. The relevant statute of conviction states that "it is unlawful for a person knowingly to possess a controlled substance." Colo. Rev. Stat. § 18-18-403.5(1). Any person possessing:

> any material, compound, mixture, or preparation that contains any quantity of flunitrazepam; ketamine; gamma hydroxybutyrate, including its salts, isomers, and salts of isomers; cathinones; or more than four grams of *a controlled substance listed in schedule I or II* of part 2 of this article 18 commits a level 4 drug felony.

Id. § 18-18-403.5(2)(a) (emphasis added). According to the government, this statutory language makes possessing the specific substance hydrocodone an element of Johnson's conviction. Johnson, on the other hand, contends that hydrocodone was not an element, but a means of satisfying the possession of a controlled substance element.

The statutory language suggests that the *schedule* of the controlled substance is an element, while the specific identity of the "substance listed in schedule I or II" is a "means" to satisfy that element. Id. Further, the statute specifically names three other substances not found in schedule I or II: flunitrazepam, ketamine, and gamma hydroxybutyrate. Id. Had the Colorado legislature intended for a specific controlled

7

substance listed in schedule I or II to constitute an essential element, it could have separately listed the substance in the statute as it did with flunitrazepam, ketamine, and gamma hydroxybutyrate. But the legislature did not do so. Instead, the legislature chose to subsume all substances listed in schedule I or II as a "means" to prove that a person possessed a schedule I or II controlled substance. We therefore conclude that the statutory language demonstrates that a jury need only conclude beyond a reasonable doubt that the defendant possessed a schedule I or II substance; a jury does not, however, need to determine beyond a reasonable doubt the specific identity of the substance.

The government contends that the Colorado statute inherently requires that a jury identify the specific controlled substance because that is the only way the jury can categorize a controlled substance as schedule I or II. But we, as well as the Supreme Court, reject such arguments. In Mathis, the Supreme Court reasoned that where "a statute requires use of a 'deadly weapon' as an element of a crime and further provides that the use of a 'knife, bat, or similar weapon' would all qualify," such a statute merely "specifies diverse *means* of satisfying a single element of a single crime." 136 S. Ct. at 2249 (emphasis added). "A jury could convict even if some jurors conclude[d] that the defendant used a knife while others conclude[d] he used a gun, so long as all agreed that the defendant used a 'deadly weapon.'" Id. (internal quotation marks and citation omitted) (alterations in original).

Relevant here, C.R.S. § 18-18-403.5(2)(a) provides that a person knowingly possesses a controlled substance by possessing a "substance listed in schedule I or II

8

of part 2 of this article."  Thus, the statute treats all controlled substances listed in schedules I and II categorically—based on schedule, not identity.  We thus conclude that the identity of a controlled substance is like a "knife, gun, bat, or similar weapon"—i.e., the identity of the substance constitutes "specifie[d] diverse means" of proving that the defendant possessed a schedule I or II controlled substance.[3] Mathis, 136 S. Ct. at 2249.  Thus, a jury need not unanimously decide the specific identity of the substance, so long as it can unanimously agree that the defendant possessed a schedule I or II controlled substance.

B.

We also conclude that the statutory punishments under the Colorado statute indicate that the identity of a particular controlled substance is not an element of the offense.  For example, C.R.S. § 18-18-403.5 carries different punishments based on schedule groupings.  "If statutory alternatives carry different punishments then . . . they must be elements."  Mathis, 136 S. Ct. at 2256.  A conviction under § 18-18-403.5(2)(a) for possession of a schedule I or II controlled substance is a level 4 drug felony.  But a conviction under § 18-18-403.5(2)(c) for possession of a schedule III, IV, or V controlled substance is a level 1 drug misdemeanor.  Thus, although the alternative schedule groupings carry different punishments, the individual substances listed within each schedule do not.

---

[3] As an example, a jury could still return a guilty verdict under the statute, even if half the jury concluded that the defendant possessed heroin (schedule I), while the other half concluded that the defendant possessed raw opium (schedule II).

9

We also find persuasive our decision in <u>Arellano v. Barr</u>, 784 F. App'x 609 (10th Cir. 2019) (unpublished), in which we analyzed a strikingly similar 1997 Colorado statute dealing with possession of a controlled substance. We concluded "that the substance is not an element" because unlike the schedules, which carry different punishments, "the substances only carry different punishments if they fall in different schedules." <u>Id.</u> at 612–13 (internal quotation marks omitted). We thus held that "because the schedules are 'statutory alternatives [that] carry different punishments,' they are elements." <u>Id.</u> at 613 (alteration in original). We find the same true today.

Although the Colorado statute may be divisible as to the particular schedules, the statute is indivisible as to the identity of the particular controlled substance. And because the Colorado statute includes morpholine as a schedule II controlled substance, and the CSA does not, the Colorado statute's schedules sweep more broadly. Thus, no categorical match exists between the state and federal schedules.

C.

State law can also help determine whether a statutory alternative is an "element" or a "means." <u>See</u> <u>Mathis</u>, 136 S. Ct. at 2256; <u>United States v. Degeare</u>, 884 F.3d 1241, 1248 (10th Cir. 2018). Here, no Colorado court opinion directly answers the question as to whether the identity of a particular controlled substance is an element or means.[4] But Colorado's jury instructions help explain which elements

---

[4] Johnson cites <u>People v. Perea</u>, 126 P.3d 241 (Colo. App. 2005) to support his position that C.R.S. § 18-18-403.5(1), (2)(a) is indivisible as to the identity of the

a jury must agree on to convict a defendant for the crime of possessing a controlled

substance.

The 2008 legacy jury instructions for possession of a controlled substance

read:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. possessed
5. *the* controlled substance.

See Chapter 18, Archived Chapters of Colorado Jury Instructions – Criminal (2008)

(emphasis added). In 2014, however, the Colorado Supreme Court changed the

instructions to read:

1. That the defendant,
2. in the State of Colorado, at or about the date and place charged,
3. knowingly,
4. possessed *a* controlled substance.

Chapter 18, Colorado Jury Instructions – Criminal (2014) (emphasis added).

Importantly, the Colorado Supreme Court broadened the language of the model jury

instructions from "the" controlled substance to "a" controlled substance before

Johnson pleaded guilty in 2016. Use of the definite article "the" refers to a specific

noun (namely, the specific controlled substance). Use of the indefinite article "a,"

---

particular substance. In Perea, the Colorado Court of Appeals held that a conviction under the controlled substances statute requires "only that a person know that he or she possesses a controlled substance, and not that he or she know the precise controlled substance possessed." 126 P.3d at 245. While we recognize that Perea addresses the *mens rea* aspect of the statute, it bolsters our conclusion that the identity of the specific controlled substance is not an element under the statute.

however, refers to non-specific nouns. This change in the jury instructions suggests that the specific identity of a controlled substance is not an element under the statute. And the applicable jury instructions reinforce our holding in Arellano that C.R.S. § 18-18-403.5(1), (2)(a) is divisible only as to the schedule, but indivisible as to the particular substance within a schedule.

We conclude that under the categorical approach, C.R.S. § 18-18-403.5(1), (2)(a) is broader than the CSA because it criminalizes possessing morpholine, while the CSA does not. Moreover, because the identity of a particular substance listed in schedule I or II is a means rather than an element of the offense, C.R.S. § 18-18-403.5(1), (2)(a) is indivisible, and we thus do not apply the modified categorical approach. Finally, because no categorical match exists between the Colorado statute and the federal CSA, Johnson's state drug conviction cannot qualify as a predicate for removal from the United States.

VACATED AND REMANDED.