**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

MALCOLM ELBRAY TRAYWICKS,
JR.,

    Defendant - Appellant.

No. 19-6173
(D.C. No. 5:19-CR-00093-R-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HOLMES** and **MORITZ**, Circuit Judges.
_____

Malcolm Elbray Traywicks, Jr., appeals his enhanced sentence under the Armed

Career Criminal Act (ACCA) for being a felon in possession of a firearm.  Exercising

jurisdiction under 18 U.S.C. § 3742(a)(1) and 28 U.S.C. § 1291, we affirm.

## BACKGROUND

Based on conduct that occurred in January 2018, Traywicks pled guilty to one

count of being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g).

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
submitted without oral argument.  This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.  It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

Ordinarily, a conviction for being a felon in possession of a firearm carries a maximum sentence of ten years. 18 U.S.C. § 924(a)(2). But under the ACCA, if the defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both," a mandatory minimum sentence of fifteen years applies. 18 U.S.C. § 924(e)(1).

The United States Probation Office prepared a presentence investigation report (PSR), indicating that Traywicks qualified for an ACCA sentencing enhancement because of multiple prior Oklahoma convictions: (1) distributing and conspiring to distribute a controlled dangerous substance (CDS) (in July and August 1990); (2) possessing a CDS (in July 1991) with intent to distribute; (3) possessing a CDS (in January 2002) with intent to distribute; and (4) possessing a CDS (in April 2002) with intent to distribute.

Traywicks objected to using his CDS convictions to support an ACCA enhanced sentence. He complained, as relevant here, that Oklahoma's drug schedules included two controlled substances—Salvia Divinorum and Salvinorin A—not found on the federal drug schedules. Thus, Traywicks maintained, it was possible to be convicted of an Oklahoma CDS offense that would not be a predicate "serious drug offense" under the ACCA, 18 U.S.C. § 924(e)(1). *See Mathis v. United States*, 136 S. Ct. 2243, 2251 (2016) (stating that "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense").

The district court overruled Traywicks' objection, noting that Salvia Divinorum and Salvinorin A were not added to the Oklahoma drug schedules until after Traywicks

2

had committed his CDS offenses. The district court then sentenced him to 15 years in prison.

## DISCUSSION

We review de novo whether Traywicks' CDS crimes qualify as predicate serious drug offenses. *United States v. Degeare*, 884 F.3d 1241, 1245 (10th Cir. 2018). To make that determination, "we generally begin with the categorical approach." *United States v. Cantu*, 964 F.3d 924, 926 (10th Cir. 2020). Under that approach, we compare "the elements of the state offense and the definition of serious drug offense" to see "[i]f one can commit the state offense by conduct that is not a serious drug offense." *Id.* at 927 (italics omitted). If so, and if the state statute is divisible, we apply the modified categorical approach, examining various court documents "to determine which version of the crime underlies the defendant's conviction." *Johnson v. Barr*, 967 F.3d 1103, 1107 (10th Cir. 2020). But if the elements of the state and federal offenses "are congruent," then the defendant's prior conviction categorically qualifies as a predicate serious drug offense and "there is no need to apply the modified categorical approach." *United States v. Dominguez-Rodriguez*, 817 F.3d 1190, 1195 (10th Cir. 2016).

A serious drug offense is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). "The incorporated definition of controlled substance is a drug or other

3

substance, or immediate precursor, included in [federal drug] schedule I, II, III, IV, or V." *Cantu*, 964 F.3d at 926 (italics and internal quotation marks omitted).

Likewise, the Oklahoma CDS statutes under which Traywicks was convicted make it unlawful for any person "to distribute, dispense, . . . or possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance." Okla. Stat. tit. 63, § 2-401(A)(1) (1990); *see also id.* § 2-401(A)(1) (2002) ("[I]t shall be unlawful for any person . . . [t]o distribute, dispense, transport with intent to distribute or dispense, possess with intent to manufacture, distribute, or dispense, a controlled dangerous substance . . . ."). Oklahoma law defines a CDS as "a drug, substance or immediate precursor in Schedules I through V of the [Oklahoma] Uniform Controlled Dangerous Substances Act," Okla. Stat. tit. 63, § 2-101(8) (1990), and prescribes categories of punishment depending on the type of CDS involved, *see id.* § 2-401(B).

Traywicks "does not dispute [that Salvia Divinorum and Salvinorin A] were not listed on Oklahoma's drug schedule at the time of his [1990, 1991, and 2002] offenses." Aplt. Opening Br. at 9. Indeed, those substances were not added as Schedule I drugs in Okla. Stat. tit. 63, § 2-204(C), until November 1, 2008. *See* 2008 Okla. Sess. Law Serv. Ch. 332, §§ 1, 3 (West). Thus, those substances cannot establish that Traywicks' CDS offenses are broader than a serious drug offense.

Recognizing the timing problem, Traywicks argues "there were other substances included on the [Oklahoma] schedule that are not on the federal schedule." Aplt. Opening Br. at 9. Specifically, he cites 4-methoxyamphetamine and cyclohexamine, which were listed as Oklahoma Schedule I drugs at the time of his offenses. *See* Okla.

4

Stat. tit. 63, § 2-204(C)(18), (19) (1990); *see also id.* § 2-204(C)(20), (21) (2002).[1] But, as the government points out, those drugs are Schedule I federally controlled substances. *See* 21 C.F.R. § 1308.11(d)(7) (2018) (4-methoxyamphetamine); *id.* § 1308.11(d)(32) (cyclohexamine) (2018).[2] Although Traywicks is correct that those drugs are not included in the federal schedules initially established in 1970, *see* 21 U.S.C. § 812, Congress gave the Attorney General the power to revise the schedules, *see id.* § 811(a), which "are published in the Code of Federal Regulations, Part 1308 of Title 21," 21 U.S.C. § 812(c) n.1.

Traywicks acknowledges that 4-methoxyamphetamine and cyclohexamine are indeed listed in the federal regulations. But he maintains that "Congress's delegation of authority to the Attorney General violates Article I, Section 1 of the United States Constitution." Aplt. Reply Br. at 4. This court has held to the contrary. *See United States v. Barron*, 594 F.2d 1345, 1352 (10th Cir. 1979) (rejecting defendant's "contention that 21 U.S.C. §§ 811 and 812 are invalid because there has been an unconstitutional delegation of authority by the Congress to the Attorney General"); *see, e.g.*, *Cantu*,

---

[1] The government argues that we should review for plain error whether 4-methoxyamphetamine and cyclohexamine render Traywicks' CDS convictions overbroad. Although Traywicks did not mention either of those two drugs at sentencing, we need not decide whether plain-error review applies because we discern no error, plain or otherwise, in the district court's ACCA analysis. *See United States v. Sayad*, 589 F.3d 1110, 1117 n.2 (10th Cir. 2009).

[2] "[T]he comparison that must be made is between what the defendant could have been convicted of at the time of the commission of the predicate state offense and what constitutes a federal drug offense at the time of the federal offense." *Cantu*, 964 F.3d at 936 (Hartz, J., concurring).

964 F.3d at 928 (consulting 21 C.F.R. §§ 1308.11–.15 to determine whether drugs were controlled substances under federal law).

Thus, Traywicks' CDS convictions are ACCA predicates, as they are no broader than a serious drug offense. *See Descamps v. United States*, 570 U.S. 254, 257 (2013) ("The prior [state] conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic [federal] offense."); *cf., e.g.*, *Martinez v. Att'y Gen.*, 906 F.3d 281, 287 (3d Cir. 2018) (holding that alien's New Jersey controlled-substance offense rendered him removable under the categorical approach where, among other things, "the federal and New Jersey lists of controlled substances were identical").

## CONCLUSION

We affirm the district court's sentence.

Entered for the Court

Jerome A. Holmes
Circuit Judge